UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN RICHARDSON II, and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE UPS STORE, INC. and J&V LOGISTICS LLC, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *    Civil Action No. 18-cv-12338-ADB <br> * <br> * <br> * <br> * <br> * |

## MEMORANDUM AND CERTIFICATION ORDER TO THE MASSACHUSETTS SUPREME JUDICIAL COURT

BURROUGHS, D.J.

Plaintiff Kevin Richardson II ("Richardson") brings this putative class action lawsuit against The UPS Store, Inc. ("UPS Store") and J&V Logistics LLC ("J&V" and together with UPS Store, "Defendants") to recover for notarization charges that he claims violated a Massachusetts statutory maximum of $1.25 per notarization. Richardson asserts that Massachusetts General Laws chapter 262, § 41 ("Chapter 262, § 41") establishes a $1.25 maximum charge for notarizations. See [ECF Nos. 33, 39, 42]. Defendants maintain that the $1.25 maximum is specific to the now obsolete practice of noting dishonored commercial paper or other bills, which was, long ago, a common practice associated with protesting dishonored commercial paper. See [ECF Nos. 34, 36, 45]. The question of state law presented by the parties' dispute is potentially case dispositive, does not appear to be governed by any controlling precedent, and is likely of importance to a significant number of notaries public across Massachusetts. Presently before the Court are Richardson's motion for class certification, [ECF No. 32], and Defendants' motion to certify a question to the Massachusetts Supreme Judicial

Court ("SJC"), [ECF No. 35]. For the reasons discussed herein, the motion for class certification [ECF No. 32] is <u>DENIED WITH LEAVE TO RENEW</u> and the motion to certify a question to the SJC [ECF No. 35] is <u>GRANTED</u>.

## I.     BACKGROUND AND FACTS

On August 30, 2016, Richardson filed this putative class action in the Superior Court of Essex County (the "Superior Court"), claiming that on various dates from 2012 through 2016 he was charged in excess of $1.25 for notarizations at a UPS store in Beverly, Massachusetts. [ECF No. 1-3 at 10]. Specifically, Richardson asserts that on at least eight occasions between 2012 and 2016 he or his wife paid up to $10.00 for individual notarizations at the Beverly, Massachusetts UPS store, incurring a total of $65.00 in fees for those services. [ECF No. 33 at 2]. None of the notarization services that Richardson paid for related to protesting commercial paper or other documents. See [ECF No. 34 at 2]. Rather, the services Richardson purchased involved verification of his or his wife's identity to assure the authenticity of their signatures on certain forms, such as an "interlock operator affidavit" and "statement of consent" that Richardson had to submit in connection with his application for a motor vehicle driver's hardship license. See id. at 26.[1] Defendants moved to dismiss the complaint, arguing that Chapter 262, § 41 limits the fees a notary may charge only for notarial services that are specifically mentioned

---

[1] Pursuant to Massachusetts General Laws chapter 90, § 24(1)(c)(3), after an individual's right to operate a motor vehicle has been revoked due to a second conviction for operating under the influence, the individual's motor vehicle license is suspended for two years, and the individual may obtain a hardship license for employment or education purposes. Code of Massachusetts Regulations Title 540 Code of Massachusetts Regulations 25.00 provides the process of obtaining a hardship license and, correspondingly, an interlock device. See 540 CMR 25.00. "[A]ny individual to whom an Ignition Interlock Restriction applies [must] execute a form, promulgated by the Registrar, which clearly indicates the penalties for violating the laws and regulations pertaining to Ignition Interlock Devices."  540 CMR 25.08(5).  The "form shall be signed by the individual under the pains and penalties of perjury, and notarized." Id.

in Chapter 262, § 41. [ECF No. 1 at 3]. The Superior Court denied the motion to dismiss because it read the "final clause" of Chapter 262, § 41 to "potentially limit notary public fees for *all* notary services performed in Massachusetts." [ECF No. 10-2 at 12].[2]

On October 10, 2018, Richardson served Defendants with a motion for class certification that claimed damages in excess of $5.9 million. [ECF No. 1 at 3]. Defendants then removed the case to this Court pursuant to the Class Action Fairness Act of 2005. Id.; see 28 U.S.C. § 1332(d). On April 11, 2019, Richardson filed his motion for class certification, which Defendants oppose. [ECF Nos. 32, 34]. On May 13, 2019, Defendants filed their motion to certify the question of the correct interpretation of Chapter 262, § 41 to the SJC, which Richardson opposes. [ECF Nos. 35, 39].[3]

## II.     DISCUSSION

The SJC "may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court" where the question of Massachusetts law "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court [that] there is no controlling precedent in the decisions of [the SJC]." Mass. S.J.C. R. 1:03. Certification of questions to the highest court of a state is likewise permissible as a matter of federal judicial discretion where the question is potentially case dispositive and no

---

[2] Notwithstanding the Superior Court's holding, it seems clear that Chapter 262, § 41 does not establish a $1.25 statutory maximum for "all notary services." For example, § 41 provides a maximum cost of $2.00 for the "whole cost of protest, including necessary notices and the record, if [a] bill, order, draft, check or note is" for $500 or more. Mass. Gen. Laws ch. 262, § 41. As such, the cost of "noting" discussed by the final clause of Chapter 262, § 41 cannot reasonably be interpreted to supply a statutory maximum for "all notary services."

[3] The Court remains somewhat mystified about why Defendants would remove a case to federal court after more than two years of litigation and then ask to have the central issue in the case certified back to a state court. The better practice would have been to either not remove the case or reconcile to federal review of the issues presented.

controlling precedent exists.  See Nieves v. Univ. of P.R., 7 F.3d 270, 274 (1st Cir. 1993) ("Absent controlling state-law precedent, a federal court sitting in diversity has the discretion to certify a state-law question to the state's highest court.").[4]  Before certifying a question to a state court, a federal court must consider whether the "course the state court would take is reasonably clear."  In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008) (quoting Nieves, 7 F.3d at 275).  Certification is only appropriate where a case presents "a close and difficult legal issue."  Id.  Even where a question of Massachusetts state law presents a difficult question of state law, a federal court must exercise discretion in deciding whether to "make [its] best guess . . . or to certify the question to the SJC."  Id.  Certification is particularly appropriate where the answer to the legal question may turn on policy judgments or where there will be significant implications for persons who are not party to the litigation.  Id.  Federal courts may also consider the "dollar amounts involved, the likely effects of a decision on future cases, and federalism interests."  Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 52 (1st Cir. 2013).

Here, the requirements for certifying a question to the SJC are met.  The parties' dispute centers on the meaning of the last nineteen words of Chapter 262, § 41, which provides:

> The fees of notaries public shall be as follows:
>
> For the protest of a bill of exchange, order, draft or check for non-acceptance or non-payment, or of a promissory note for non-payment, if the amount thereof is five hundred dollars or more, one dollar; if it is less than five hundred dollars, fifty cents; for recording the same, fifty cents; for noting the non-acceptance or non-payment of a bill of exchange, order, draft or check or the non-payment of a promissory note, seventy-five cents; and for each notice of the non-acceptance or non-payment of a bill, order, draft, check or note, given to a party liable for the payment thereof, twenty-five cents; but the whole cost of protest, including

---

[4] See also Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50–51 (1st Cir. 2013) (certifying question where "[t]he issues of state law will be determinative in this case"); BostonGas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008) (certifying question where "the issue is determinative of the scope of Boston Gas' claim"); In re Engage, Inc., 544 F.3d 50, 52–53 (1st Cir. 2008) (certifying question where "this state law issue may be determinative of R&G's cause of action").

4

>necessary notices and the record, if the bill, order, draft, check or note is of the amount of five hundred dollars or more, shall not exceed two dollars, and if it is less than five hundred dollars, shall not exceed one dollar and fifty cents; and the whole cost of noting, including recording and notices, shall in no case exceed one dollar and twenty-five cents.

Mass. Gen. Laws ch. 262, § 41.  Richardson's lawsuit is premised on his assertion that the charges in excess of $1.25 that he incurred exceeded the statutory maximum.[5]  If Chapter 262, § 41 does not establish a $1.25 maximum for the notarial acts at issue, this lawsuit will almost certainly conclude in Defendants' favor.  The question of whether Massachusetts law establishes a $1.25 maximum for all notarial services therefore "may be determinative of the cause."  See Mass. S.J.C. R. 1:03.

The Court is unaware of any controlling precedent from the SJC or the First Circuit on this question.  Further, it has found no persuasive authority from any lower courts.  The case law that Richardson marshals in support of his argument that Chapter 262, § 41 establishes a $1.25 maximum for notarizations is comprised of the equivocal assertion from the Superior Court in this case that the statute "potentially limit[s] notary public fees for *all* notary services," a sentence in a dissent from a 1987 SJC opinion, and a stipulated conclusion of law that was entered pursuant to a joint motion in a 2012 Suffolk County Superior Court case.  [ECF No. 39 at 2].[6]  Although Richardson's proffered case law is relatively unpersuasive, Defendants have offered no case law of their own.

---

[5] Richardson has also asserted that Massachusetts General Laws chapter 262, § 43 might proscribe the charges at issue here.  Section 43 provides, "The fees of public officers for any official duty or service shall, except as otherwise provided, be at the rate prescribed in this chapter for like services."  The Court thinks this argument is unlikely to succeed even if it is reached, but it will nevertheless include Chapter 262, § 43 in the certified question.

[6] The 1987 SJC case, Quinn v. State Ethics Commission, 516 N.E. 124 (Mass. 1987), concerned whether an individual who served as both a bail commissioner and comptroller of the Water Resource Authority violated Massachusetts' conflict of interest law.  Justice Liacos wrote in dissent that the SJC's attempt to distinguish notaries public from bail commissioners for the purposes of the conflict of interest law seemed "disingenuous."  Id. at 130 (Liacos, J.,

Instead, Defendants point to the history of Chapter 262, § 41 and a significant body of secondary sources that seem to conclude that Massachusetts does not have a maximum fee for non-protest-related notarial services. See [ECF No. 34 at 11–12 (citing National Notary, Massachusetts Notary Primer 30 (Nat'l Notary Ass'n 3d ed. 2018) ("In Massachusetts, there is no statutory fee schedule for acknowledgements, oaths, affirmations, jurats, certified copies, or signature witnessing."), then citing Charles N. Faerber, 2012–2013 U.S. Notary Reference Manuel 286 (Nat'l Notary Ass'n 11th ed. 2011))]. In rebuttal, Richardson offers his own secondary sources. See [ECF No. 39 at 7 (citing American Society of Notaries, Handbook for Notaries Public of Massachusetts 25 (2d ed. 1996) ("The maximum you may charge a client for a common notarial act appears to be $1.25."), then citing William Francis Galvin, Secretary of the Commonwealth, Guidelines for the Notary Public (May 1996) ("[N]otaries public may charge no more than one dollar and twenty-five cents ($1.25) for noting and recording a document . . . .")]. The Court is satisfied considering the dispositive nature of the issue, the contradictory conclusions of secondary sources, and the complete absence of binding precedent or persuasive judicial authority that the question at issue presents a question of state law that warrants certification to the SJC.

Further, certifying a question on the proper interpretation of Chapter 262, § 41 is appropriate here given the potential breadth of the impact on non-parties, the sums of money

---

dissenting). He implied that notaries public were not in fact so different from bail commissioners in part because "[t]he public who use the services of the notaries public pay a statutorily set fee." Id. (citing Mass. Gen. Laws ch. 262, § 41). The majority did not address the issue and Justice Liacos' assertion is not even clearly inconsistent with Defendants' argument that Chapter 262, § 41 establishes fees only for notarial services associated with protesting commercial paper. The Superior Court case, Real Estate Bar Association for Massachusetts v. National Loan Closers, Inc., No. SUCV201201609E, 2012 WL 6928118 (Mass. Super. Ct. Nov. 30, 2012), was based upon a joint motion and the parties' stipulated conclusion of law that "notaries public may not charge more than $1.25 to notarize a document." Id. at *4.

involved, and because the question presented will help provide a definitive answer as to the rights of more than 100,000 public servants who are licensed and regulated by the Commonwealth as notaries public. See Mass.gov, Find A Notary Public, https://www.mass.gov/service-details/find-a-notary-public.[7] A clear and definitive answer as to whether notaries public may charge in excess of $1.25 for non-protest-related notarial services will likely benefit a significant number of notaries by clarifying the terms on which they may engage in business, answering the question of civil liability for past charges, and informing notaries whether they could be subjected to disciplinary action or non-renewal of their commission for charging more than $1.25 for a non-protest-related notarial act. See Mass. Gen. Laws ch. 222, §§ 13(b)(vii), 18(a). Additionally, were this Court to disagree with the above-mentioned dissenting SJC justice and the two Massachusetts Superior Court judges who addressed this issue in a tangential or relatively cursory manner, the question would remain unsettled. One way or the other, a ruling from the SJC will definitively resolve the question in a way that this Court cannot. Further, while the $5.9 million at issue here may be a relatively paltry sum in the scheme of class action litigations, it is surely an amount of significance to the parties, and it likely represents only a fraction of the potential liability that entities and individuals across the Commonwealth may be subject to if Richardson's position succeeds. The Court therefore will exercise its discretion to certify a question to the SJC on the proper interpretation of Chapter 262, § 41.

---

[7] See Easthampton Sav. Bank, 736 F.3d at 52 (certifying questions where "resolution of these issues will have ramifications for thousands more mortgages throughout the Commonwealth"); In re Engage, Inc., 544 F.3d at 53 ("certification is particularly appropriate here since the answers to these questions . . . will certainly have implications beyond these parties"); BostonGas Co., 529 F.3d at 15 (certification appropriate where outcome "could easily matter in future cases not involving these parties"); Brown v. Crown Equip. Corp., 501 F.3d 75, 77 (1st Cir. 2007) (certifying question where "implications go beyond the parties").

7

III.     **CERTIFICATION TO SUPREME JUDICIAL COURT**

Accordingly, the Court certifies the following question to the Massachusetts Supreme Judicial Court:

Does Massachusetts General Laws Chapter 262, §§ 41 or 43 proscribe fees in excess of $1.25 for notarization of a document where the notarial act at issue is unrelated to the protest of a bill of exchange, order, draft or check for non-acceptance or non-payment, or of a promissory note for non-payment?

The clerk is directed to forward this order to the SJC under the seal of this Court and to provide any portion of the record that the SJC may require, including portions of the record filed under seal.

In the interest of docket control, the motion for class certification [ECF No. 32] is DENIED WITH LEAVE TO RENEW. Richardson shall have fourteen (14) days from any decision from the SJC on the certified question to renew the motion for class certification. If Richardson intends to renew his motion following a ruling from the SJC, the parties shall meet and confer to narrow the issues before the motion is renewed.

**SO ORDERED.**

June 24, 2019                                                                  /s/ Allison D. Burroughs
                                                                               ALLISON D. BURROUGHS
                                                                               U.S. DISTRICT JUDGE